RESOLUTE INSURANCE COMPANY v. MIZE.

4-9976                                      255 S. W. 2d 682

Opinion delivered March 2, 1953.

Rehearing denied March 30, 1953.

706

*Josh W. McHughes,* for appellant.

*Henry E. Spitzberg,* for appellee.

ROBINSON, Justice. This is a suit on a policy of automobile collision insurance. There was a judgment in favor of the policyholder, and the insurance company has appealed.

On April 3, 1950, the appellant, insurance company, issued its policy of collision insurance to appellees on a G. M. C. truck. The policy provided a $5,000 limit of liability with a $250 deductible clause. About a year later, while the policy was in full force and effect, the

vehicle was involved in a collision and it was considerably damaged. The cause was submitted to the court, sitting as a jury, and there was a judgment for the policyholder in the principal sum of $3,800 and interest, a twelve per cent penalty was added, as provided by statute, and $750 was assessed as attorney's fee.

Appellant urges for reversal: that appellees breached the contract by placing a mortgage on the property; that the trial court erred in its refusal to permit appellant to amend the answer to allege the policy was void because appellees used the truck as a public or livery conveyance; that appellees refused to allow the truck to be repaired; that appellees could not recover more than the lowest estimate to repair the truck and that the judgment here is in excess of that amount; and that the judgment is excessive and no attorney's fee or penalty should be allowed.

The policy provides: ''This policy does not apply: (a) under any of the coverages, while the automobile is used as a public or livery conveyance, unless such use is specifically declared and described in this policy and premium charged therefor; (b) under any of the coverages, while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrances not specifically declared and described in this policy; . . .''

Appellees were engaged in hauling produce. The evidence shows that in September, 1950, they planned to go to California for the purpose of hauling tomatoes. Since there was a possibility that they might encounter some difficulty on such a long distance trip and would be in need of additional funds, they made arrangements with a Mr. Howard Halley, whereby they gave him a mortgage on the truck to secure an indebtedness of $3,500. No money was actually received by them at that time nor at any other time. The plan was to give the mortgage so that they would be in a position to obtain the money from Mr. Halley if and when it was needed. It was never needed and therefore never obtained.

In the early part of April, 1951, the truck was damaged. Appellant claims that the policy was rendered void because of the giving of the mortgage. But the provision of the policy relied on by appellant does not say the policy is void in the event a mortgage is given. It merely provides that the policy does not apply while the automobile is *subject* to a mortgage. It cannot be said here that the truck was subject to any mortgage at the time it was damaged. It is true that Mr. Halley held what purported to be a mortgage; but he had given no consideration for such, the appellees did not owe him a dime on any mortgage, and he held no enforceable obligation. Before it can be said that the truck was subject to a mortgage, someone would have to hold a mortgage that could be enforced. Mr. Halley could not enforce such an instrument when nothing had been paid as consideration for the note secured by the mortgage. In *Lavender* v. *Buhrman-Pharr Hardware Company,* 177 Ark. 656, 7 S. W. 2d 755, it was said: ''Certainly the loan company could not collect the note given for the loan nor foreclose the mortgage given to secure the payment thereof, when it had never in fact made such loan by delivering the money to the makers of the note and mortgage.''

Appellant cites *Rhea* v. *Planters' Mutual Insurance Association,* 77 Ark. 57, 90 S. W. 850, but in that case the policy provided that if the property should become encumbered by a mortgage, or if the interest of the owner should become anything less than a perfect legal title, the contract of insurance would be ''absolutely null and void.'' To the same effect are *German-American Insurance Co.* v. *Humphrey,* 62 Ark. 348, 35 S. W. 428, and *The Aetna Casualty & Surety Company* v. *Jackson,* 203 Ark. 839, 159 S. W. 2d 461. In all those cases the policy provides that it shall be void by reason of the giving of a mortgage. Here the policy does not provide that it shall be void if a mortgage is given; it merely provides that the policy shall not apply while the automobile is subject to a mortgage, and it cannot be said that the truck involved in this litigation is so encumbered.

Furthermore, even if it could be said that the language of the policy made it void by the execution of what purported to be a mortgage, the insurance company waived such alleged forfeiture by its action in connection with the claim. About two days after the collision, an adjuster who investigated the loss learned from Louis Mize, one of the appellees, the facts about the purported mortgage and notified the appellant, insurance company. Subsequently, the appellant, through its agents, sought permission to take the truck to Tulsa for repairs.

Mize testified that at the request of the insurance company's agent, he obtained estimates of the cost of repairs from Lewis-Diesel Engine Company, International Harvester Company and Summers-Corbin Garage; that he went to considerable trouble to get these estimates and deliver them to the insurance company's agent; that practically all of his time during a three-day period was used in securing the estimates and conferring with appellant's agent; that although the insurance company had knowledge of the mortgage, nothing was said to him about it, and the insurance company made no claim of a forfeiture of the policy because of the mortgage.

In the case of *Security State Fire Insurance Co.* v. *Harris,* 220 Ark. 900, 251 S. W. 2d 115, this court said that although a sole ownership clause in a fire insurance policy is valid and voids a contract if the ownership is otherwise, ". . . it is equally well settled that this clause may be waived by the insurer as when it has been informed of the nature of the title (*State Mutual Insurance Co.* v. *Latourette,* 71 Ark. 242, 74 S. W. 300), and when it requests proof of loss with knowledge of violation of the sole ownership provision."

In *German Insurance Co.* v. *Gibson,* 53 Ark. 494, 14 S. W. 672, the court said: "An insurance company can take advantage of the breach of any condition contained in its policies and claim a forfeiture, or waive the forfeiture; 'and it may do this by express language to that effect, or by acts from which an intention to waive may

be inferred, or from which a waiver follows as a legal result.' This is an unquestioned right, and the exercise of it is always encouraged by the courts.''

In *Planters' Mutual Insurance Co.* v. *Loyd,* 67 Ark. 584, 56 S. W. 44, it is stated: ''. . . when the insurer, with knowledge of any act on the part of the assured which works a forfeiture, enters into negotiations with him which recognize the continued validity of the policy, and thus induces him to incur expense or trouble under the belief that his loss will be paid, the forfeiture is waived.''

In *Washington County Farmers Mutual Fire Insurance Company* v. *Reed,* 218 Ark. 522, 237 S. W. 2d 888, this court quoted with approval from *National Surety Company of New York* v. *Fox,* 174 Ark. 827, 296 S. W. 718, 54 A. L. R. 458: ''Forfeitures are not favored in law, and any agreement, declaration or course of action on the part of an insurance company which leads the insured honestly to believe that by conforming thereto, a forfeiture of his policy will not be incurred, followed by conformity on his part will estop the insurance company from insisting upon forfeiture.''

After appellees made the trip to California they made one or more trips with the truck to some other State hauling produce for hire. At the trial when this fact was brought out, appellant asked permission to amend the answer and deny liability because of the provision in the policy that it did not apply while the automobile was in use as a public or livery conveyance. The court properly denied the motion that the defendant be permitted to amend its answer since there was no evidence in the record to the effect that the truck was being used in such manner at the time of the collision; and the fact that the truck had been used to haul for hire several months prior to the collision would not be material.

In *Globe & Rutgers Fire Insurance Company* v. *Pruitt,* 188 Ark. 92, 64 S. W. 2d 91, this court quoted and approved the following statement of the law from *North*

*River Insurance Company of New York* v. *Lloyd,* 180 Ark. 1030, 23 S. W. 2d 988: "The general rule to be deduced from the weight of authority is that the violation of a condition in a policy of insurance, which works a forfeiture thereof, merely suspends the insurance during the violation, and that, if such violation is discontinued during the life of the policy, and is nonexistent at the time of loss, the policy revives, the insurance is restored, and the insurer is liable, although he has never consented to a violation of the conditions in the policy, and such violation has been such that the insurer could, had he known of it at the time, have declared a forfeiture thereof."

The next assignment of error alleged by appellant is that the policy gives the insurer the right to repair the truck, that it had offered to make such repairs and appellees had refused to permit same to be made, and, as a result of such refusal, the insurance company is relieved of liability. The policy provides: "The company may pay for the loss in money or may repair or replace the automobile." Several estimates were made of the cost of repairing the truck. The Lewis-Diesel Engine Company of North Little Rock submitted an estimate of $4,219.07, the International Harvester Company of North Little Rock submitted an estimate of $4,910.34, the Summers-Corbin Garage of Little Rock submitted an estimate of $2,395.95, and the Southwestern Auto of Tulsa, Oklahoma, submitted an estimate of $1,849.61. The insurance company offered to have the truck repaired by the Tulsa concern. This offer was refused by appellees, and the insurance company made no offer to have the truck repaired elsewhere.

Although a policy may not designate the time in which the option to repair must be exercised, the courts have held a reasonable time prevails. "Such option, where no other time is stated in the policy, must be exercised within a reasonable time, which will depend in any instance upon the circumstances of the particular case." *Blashfield Encyclopedia of Automobile Law and Practice,* Volume 6, Section 3819. "Where no time is fixed

by the policy for the exercise of the insurer of its option, it must give notice thereof within a reasonable time, and if it does not make its election in apt time, and give the insured notice, the right to rebuild or repair does not exist." 29 Am. Jur. 945.

We think the same rule should apply as to where the repairs must be made. Obviously, it would not be unreasonable to take a car from Little Rock to North Little Rock for repairs, or perhaps to remove a car to another State, as from West Memphis to Memphis, or from Texarkana, Arkansas, to Texarkana, Texas; but, on the other hand, it could be wholly unreasonable to require that the automobile be taken to a distant point in another State when there are ample facilities locally to make the repairs. Each case of this kind depends on its own particular facts in that respect. There are many reasons why appellees would not want their truck taken to Tulsa for repairs, and it is shown that there are reliable concerns in Little Rock equipped to make such repairs. There is substantial evidence to sustain the finding of the trial court, sitting as a jury, that the request to take the truck to Tulsa, Oklahoma, for repairs was unreasonable.

Appellant's next contention is that the policyholder could not recover more than the lowest estimate to repair the truck. Upon finding that the policyholder was justified in refusing to permit the truck to be taken to Tulsa for repairs, and there was no offer to repair the truck elsewhere, then the measure of damages was, as this court has held many times, the difference in the market value of the vehicle immediately before and after the collision. *Kane* v. *Carper-Dover Mercantile Company,* 206 Ark. 674, 177 S. W. 2d 41, and *Golenternek* v. *Kurth,* 213 Ark. 643, 212 S. W. 2d 14, 3 A. L. R. 2d 593.

Appellant claims that in fixing the damages at $3,800, the court failed to take into consideration the $250 deductible feature of the policy. But the evidence is clear to the effect that if the $250 deductible feature had not been taken into consideration, the judgment would have been for $4,050. Hence, the court was not in

error in allowing the twelve per cent penalty and reasonable attorney's fee.

Finding no error, the judgment is affirmed.